## Sloan *versus* The Union Banking Company.

1. Before the holder of negotiable paper can be required to prove his bona fides, it must appear that the instrument was obtained originally, or was put into circulation subsequently by fraud or undue means.

2. Want or failure of consideration or that an agent or broker had fraudulently misappropriated the proceeds of discount, is not sufficient to put the holder to the proof of his bona fides.

3. In an action against a drawer by a bank, holding a note from the payee, the affidavit of defence was that the note had been given for a balance supposed to be due to the payee, that it was afterwards discovered that nothing had been due to the payee; that the payee had funds sufficient in the bank to pay the note, and that before it was due the endorser gave notice to the bank of the mistake and required them to pay it out of the endorser's funds held by them. *Held* not to be a sufficient defence.

February 9th and 10th 1871. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 168, to January Term 1871.

On the 17th of September 1870, The Union Banking Company of Philadelphia commenced an action of assumpsit against Elwood P. Sloan. The cause of action was the following note :—

"$2000                                    Philadelphia, June 9th 1870.

" Three months after date, I promise to pay to the order of Francis H. Good two thousand dollars, payable at the Union Banking Co., without defalcation. Value received.

"ELWOOD P. SLOAN."

(Endorsed) "FRANCIS H. GOOD."

Sloan filed the following affidavit of defence :—

" The note, a copy of which is filed, was given by this deponent to one Francis H. Good, payee therein named, under the following circumstances :—

" The said Good and this deponent were formerly copartners, transacting business together under the firm of Sloan & Good. Upon the dissolution of their partnership, at or about the date of said note, there appeared by the books of the firm to be due by this deponent to his said copartner a sum of money exceeding in amount $2000. Acting on the belief that said sum was due, but before the settlement was had, this deponent agreed at the request of said Good to give his, this deponent's note for said sum of $2000, and thereupon he did in fact give the said Good the note, a copy of which is filed, on account of said supposed balance. Subsequently to the making of the same, it was discovered that there was an error in the account of the said firm, upon a correction of which it was ascertained that nothing was due to the said Good, but the balance of said account was in favor of this depo-

[Sloan *v.* Union Banking Co.]

nent, and this deponent, in fact, says that at the time of the making of the said note he was not indebted to the said Good in any amount, and has not since been, and is not now indebted to him; that said note was given in mistake, and that as between Good and this deponent, it is without any consideration whatever.

"And this deponent further says that, upon discovering these facts, he immediately gave a notice to the plaintiffs, who, as he was informed, were then the holders of the said note, a copy of which notice is annexed, and this deponent is informed, and verily believes and expects to be able to prove, that the said bank had then, at the time when said notice was given, or has since had in its possession, deposits of the said Good, or in which he was interested, sufficient in amount fully to reimburse them for the amount, if any, advanced to him on account of this note, and which said bank might have retained for said purpose, and he is advised that it was their duty so to apply such deposits; and deponent is further informed, and verily believes and expects to be able to prove, that said bank has, in fact, been fully indemnified by said Good against all loss by reason of the non-payment of said note by this deponent."

Notice to the bank:—

"Philadelphia, September 6th 1870.

"To The Union Banking Co.,

"Gentlemen: I give you notice that a note for $2000, made by me in favor of F. H. Good, dated June 9th last, payable in three months, and due on the 12th inst.; was made and delivered by me to Mr. Good under a mistake; that no part of the sum for which it was given is, or was at the making of it, due by me to him, and that I will not pay it at maturity.

"I give you this notice that, as between you and Mr. Good, you may have time to protect yourself from loss by retaining any moneys of his in your hands, or which may come to your hands, and I particularly caution you against parting with the note or giving any facilities for its passing into other hands.

"ELWOOD P. SLOAN."

The court entered judgment for $2019.17, for want of a sufficient affidavit of defence. This the defendant assigned for error on the removal of the record to the Supreme Court.

*J. H. Gendell* and *E. S. Miller*, for the plaintiff in error.— Deposits in bank by Good immediately became the property of the bank: Morse on Banking 26. A bank is bound to pay itself out of the drawer's deposits or else the endorser is discharged: Morse on Banking 34, 39; McDowell *v.* Bank, 1 Harring. 369; Dawson *v.* Real Estate Bank, 5 Pike 283; Ex parte Hippins, 2 Glyn's Cases in Bankruptcy 93.

[Sloan *v.* Union Banking Co.]

*M. H. Todd*, for defendants in error.

The opinion of the court was delivered, February 20th 1871, by SHARSWOOD, J.—It may certainly be considered as well established in this state, that before the holder of negotiable paper can be required to prove his bona fides, it must appear, either by direct evidence or by circumstances, that the instrument was obtained originally, or was put in circulation subsequently, by fraud or undue means. It is certain also that want or failure of consideration, or even that an agent or broker to whom it was intrusted for negotiation had fraudulently misappropriated the proceeds of its discount, will not be sufficient for that purpose. The maker, by its negotiable form, authorizes the payee to put it in circulation. If he has issued the note imprudently, that ought not to impose upon the holder what may often be a very difficult, because an unexpected, burden. On the other hand, a man who has lost, or been robbed or defrauded, is to be considered in the light of an unfortunate rather than an imprudent man, and therefore has a claim to protection against malâ fide holders. These are the grounds upon which the rule is placed in Knight *v.* Pugh, 4 W. & S. 445; Brown *v.* Street, 6 Id. 221; Albrecht *v.* Strimpler, 7 Barr 476; Gray *v.* The Bank, 5 Casey 365. The allegation made in the affidavit of defence filed in the court below, that the note sued upon was given for the balance appearing upon the settlement of a partnership account between the maker and the payee, in which it has since been discovered that there was a mistake, is after all nothing but want of consideration. It is not pretended that there was any fraud or falsehood on the part of the payee, or even that he was cognisant of the error when he received the note and put it in circulation. He was doing no moral wrong whatever. The bank who took it from him were justified, for aught that is alleged, in placing the most entire confidence in his integrity. Why, then, should they be required to prove affirmatively when and how they acquired possession of the note? It would not be wise to extend the principle of Holme *v.* Karsper, 5 Binn. 469, any further than our determinations have already carried it, for it would be a very serious impediment to the free circulation of negotiable paper, which is so highly important in a commercial community.

As to the remaining ground of defence, it is not easy to understand upon what principle the maker of a note can require the holder to appropriate money of the payee in his hands to its payment; and this upon his own naked allegation that as between him and the payee he has a good defence. The bank, by the notice served upon them, were asked in effect to suspend proceedings against the maker, to pay themselves from the deposits of their own customer, and thus compel him to turn round and sue

[Sloan *v.* Union Banking Co.]

the maker on the note. They have a right to do this, because they can pursue all or either of the parties, according to their discretion; but there is no right or equity in the maker to require it. It would be a very unjust proceeding if this alleged defence is unfounded in law or fact. Must the bank be put to the trouble of ascertaining that? The maker is the party who on the face of the paper is ultimately liable, and where he is able, it would seem most reasonable and just to pursue him in the first instance. Let him pay the note and bring his action of account or file his bill in equity against his former partner. If he can show the mistake, his remedy will be adequate and complete. As to the suggestion that the payee may draw all his deposits from the bank and abscond, it may be answered that the maker may do the same, and the payee be unable to follow him.

Judgment affirmed.