## Listie Coal Company v. Farmers National Bank.

*Negotiable instruments—Bonds—Holder in due course—Fraud—Burden of proof—Negotiable Instruments Act of May 16, 1901, sects. 52 and 59.*

In an action by the maker to recover possession of negotiable instruments from a pledgee, where the maker has shown title and that the person who negotiated the paper was guilty of fraud in so doing, the holder is required, under section 59 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, in order to retain possession, to show that he is a holder in due course as defined by section 52 of the act.

Replevin. Motion to take off non-suit. C. P. Somerset Co., Dec. T., 1924, No. 123.

*Kooser & Kooser,* for motion; *Boose & Boose* and *C. L. Shaver,* contra.

BERKEY, P. J., June 17, 1925.—The plaintiff, on Dec. 1, 1917, executed and delivered to The County Trust Company of Somerset, as trustee, a mortgage securing an issue of bonds; amongst others, the six bonds in controversy, providing that said bonds, *inter alia,* shall be applied to the following purposes only:

"*A.* To the purchase of fourteen hundred and thirty-seven (1437) acres, or more, of coal lands at such prices per acre as may be determined and authorized by the board of directors of the coal company.

"*B.* To the cost of opening and equipping mines on the premises of the coal company, upon which shall be erected buildings for mining operations and miners' dwellings, and to the cost of the construction of such buildings and dwellings, and of the acquisition of machinery, appliances and equipment for the conduct of mining operations at said mines."

The plaintiff's treasurer, J. C. Brydon, received from the trustee the bonds in suit, which he kept in a safety deposit box rented by the plaintiff in the Somerset Trust Company of Somerset.

J. C. Brydon, President of the Quemahoning Creek Coal Company, on May 23, 1924, negotiated a loan with the Farmers National Bank of Somerset, on behalf of the Quemahoning Creek Coal Company, in the sum of $5000, offering as collateral security for the loan bonds issued by the borrower of the par value of $6000. The next day Ross S. Rinard, an employee of the plaintiff in charge of the plaintiff's accounting records, by direction of J. C. Brydon, the treasurer, offered the bonds in suit as collateral security for the loan, when the bonds then offered were accepted by the cashier of the bank and the proceeds of the note paid to the Quemahoning Creek Coal Company.

The face of each bond in suit contains the following language:

"The Listie Coal Company, a corporation organized and existing under the laws of the State of Pennsylvania, for value received, promises to pay on the first day of December, 1927, at the office of The County Trust Company, in the Borough of Somerset, County of Somerset and State of Pennsylvania, to bearer or, if registered, to the registered holder of this bond, One Thousand Dollars, . . . and to pay the interest thereon from the first day of December, 1917, at the rate of six per centum per annum, . . . semi-annally on the first

day of June and the first day of December in each year upon presentation and surrender of the respective coupons for such interest hereto attached as they severally mature."

It further appears on the face of each bond: "This bond shall pass by delivery unless registered."

The coupons read:

"The Listie Coal Company $30.00 will pay to Bearer on the first day of Dec. 1919, at the office of The County Trust Company, in Somerset, Pennsylvania, Thirty ($30.00) Dollars, in United States Gold coin without deduction for taxes, being six months' interest then due on its first mortgage Ten Year Six Per Cent. Sinking Fund Gold Coupon Bond No. 150. J. C. Brydon, Treasurer."

The bonds and the coupons are signed by J. C. Brydon, President and Treasurer, respectively. The coupons are attached to the bonds from and after Dec. 1, 1919, and the bonds have not been registered. Each bond contains the certificate of the trustee essential to its validity, as required on the face of the bond.

This action was instituted by the plaintiff to recover from the defendant the bonds pledged by J. C. Brydon, President and Treasurer of the Listie Coal Company, a corporation, as collateral security to the defendant for a loan he negotiated on behalf of the Quemahoning Creek Coal Company, a corporation, he being president thereof.

On the trial of this action, the court, on motion of the defendant, entered a compulsory non-suit against the plaintiff. Thereupon the plaintiff moved the court to take off the non-suit, assigning reasons:

"1. The court erred in holding that the Farmers National Bank of Somerset, Pennsylvania, defendant, was an innocent holder for value of the plaintiff's bonds in controversy.

"2. The court erred in failing to hold that the circumstances and conditions shown by the evidence in the case imposed upon the defendant the duty to make inquiry concerning the validity of the issue of said bonds.

"3. The court erred in failing to hold that the circumstances and conditions shown by the evidence in the case imposed upon the defendant the duty to make inquiry concerning the right of J. C. Brydon, the Quemahoning Creek Coal Company or representatives to deposit said bonds as collateral security or otherwise for said Quemahoning Creek Coal Company or J. C. Brydon.

"4. The court erred in excluding evidence offered by plaintiff.

"5. The court erred in refusing plaintiff's objections to questions to witnesses by defendant on cross-examination.

"6. Generally, the entry of the non-suit was against the law applicable to the case."

This form of action is an admission by the plaintiff that the defendant is in possession of the bonds in controversy. They are negotiable securities, transferable by delivery, and being in the defendant's possession, it is deemed *prima facie* to be a *bona fide* holder for value and before maturity. The defendant's possession is *prima facie* evidence of ownership (Carr *v.* LeFevre, 27 Pa. 413), because the presumption is that the bonds were honestly acquired: Robinson *v.* Hodgson, 73 Pa. 202, 210. Hence, the mere fact of prior ownership by the plaintiff was not sufficient in itself to establish the *prima facie* ownership of the bonds in the plaintiff and to warrant a jury in so finding: Maxler *v.* Hawk, 233 Pa. 316, and before the defendant, the holder of the bonds, can be required to prove its *bona fides*, it must appear either by direct evidence or by circumstances that the bonds were obtained originally, or were

put in circulation subsequently, by fraud or undue means: Sloan *v.* Union Banking Co., 67 Pa. 470; Putman *v.* Ensign Oil Co., 272 Pa. 301; but when the maker of a negotiable instrument proves title to the paper in suit and shows a defective title in the person who negotiated the instrument in suit, then, as provided in section 59 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, "when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he . . . acquired the title as holder in due course:" Second National Bank *v.* Hoffman, 229 Pa. 429; United Shoe Machine Co. *v.* Winston, 58 Pa. Superior Ct. 526; Putman *v.* Ensign Oil Co., 272 Pa. 301; and the maker of the instrument is not required, in the first instance, to show the bank had knowledge of defective title in the pledgor of the instrument, pledged for a loan, for, after showing the defective title in the pledgor, the bank was called upon to show affirmatively that it had no notice of fraud when it took the note in good faith and for value: *Supra.*

The maker having shown title and fraud on the part of the person who negotiated the paper, the holder of the instrument is required by section 52 of the Negotiable Instruments Law to show it is a holder in due course, to wit:

"Section 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular on its face.

"2. That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In the trial and in the argument by counsel of the motion under consideration, this case was heard upon the law as it prevailed before the enactment of the Negotiable Instruments Law. It was argued by plaintiff's counsel "that the circumstances and conditions shown by the evidence imposed upon the defendant the duty to make inquiry concerning the validity of the issue of the bonds" (see motion to take off non-suit), imposing upon the plaintiff the burden of proving the *mala fides* of the defendant; a burden it was not legally required to assume, and which, under the authorities, it had not established; wherefore, we think we were led into error and the non-suit must be taken off.

The evidence adduced by the plaintiff (1) was sufficient to establish, *prima facie,* legal title to the bonds in the plaintiff, and (2) sufficient to show fraud on the part of the Quemahoning Creek Coal Company, by its president, in negotiating the bonds as collateral security on a loan of the Quemahoning Creek Coal Company at the Farmers National Bank of Somerset. The plaintiff having shown title to the bonds and fraud by the person negotiating them with the defendant, the plaintiff made out a case which requires the defendant to meet the burden to prove that it acquired title to the bonds in due course. In this view of the case, all the reasons set forth in the motion to take off the non-suit are overruled save the sixth, which reads, "The entry of the non-suit was against the law applicable to the case," which reason is sustained.

### Decree.

Now, June 17, 1925, for the reasons set forth in the foregoing opinion, motion to take off compulsory non-suit sustained and non-suit taken off.

From Daryle R. Heckman, Somerset, Pa.