## Myers' Estate.

*Decedents' estates—Money paid to decedent—Loans—Gifts— Intention.*

Where a decedent several months before his death gave to his divorced wife $17,000 to fulfil a moral obligation, and she placed such sum in trust with power of revocation, and thereafter decedent requested the return of the money, and the wife after revoking the trust, complied with the request, the inference could not be drawn from such facts that the divorced wife loaned such money to decedent, and a claim therefor against his estate was properly disallowed.

Argued Jan. 5, 1915. Appeal, No. 127, Jan. T., 1914, by Estella D. Myers, from decree of O. C. Philadelphia Co., Oct. T., 1913, No. 202, dismissing exceptions to adjudication in estate of Charles E. Myers, Deceased. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in the following excerpt from the adjudication of GEST, J.:

The facts upon which this claim is founded are somewhat unusual and have been the subject of careful consideration by the auditing judge. In order to understand them, it is advisable that they be recited in chronological order. Estella D. Myers, the former wife of the testator, was divorced from him at a date not appearing in the testimony. On May 1, 1911, while the divorce suit was pending, the testator, Charles E. Myers, executed a deed of trust to the Commonwealth Title Insurance & Trust Company, reciting this fact, that the libellant was about to enter a rule for alimony and that the parties desired to adjust the question of alimony without the necessity of such rule. Accordingly, Myers agreed to deposit the sum of $30,000 with the Common-

wealth Title Insurance & Trust Company and to pur-
chase a dwelling house for the said Estella D. Myers,
his then wife, to cost between $5,000 and $6,000, for her
use during her life, and to pay the taxes, water rent and
fire insurance and the cost of the necessary repairs dur-
ing that period, and further to deliver certain house-
hold furniture and pay $1,000 in cash to said Estella D.
Myers.   The trust deed provided that the Common-
wealth Trust Company should invest the said sum of
$30,000, and pay the income to Mrs. Myers, and at her
death the said fund with any real estate included in the
trust should be paid and conveyed to Myers if he were
living and if he should be dead to such persons as might
be directed by his last will or in default thereof to his
heirs and next of kin under the intestate laws.

On July 1, 1911, the parties executed a supplementary
deed of trust, by which Myers agreed to convey to the
Commonwealth Trust Company in lieu of the dwelling
house referred to in the first agreement certain premises
in Green Lane in trust to permit Estella D. Myers to
use and occupy the same for the term of her life and on
her decease in trust to permit Carrie Graeves to occupy
the same for the term of her life and on her decease the
real estate or the proceeds thereof should be paid or con-
veyed as provided in the deed of May 1, 1911, together
with certain other unimportant modifications not neces-
sary to be recited.   The terms of the agreement as thus
modified were carried out.

According to the testimony of Dr. James D. Schofield,
a friend of Myers and associated with him in the prac-
tice of medicine, he was told by Myers, in January,
1912, that he had not treated his wife right; that he
would give anything in the world to undo what he had
done and that he intended to do everything possible for
her while he lived.   In that month Myers twice gave the
witness money to give to Mrs. Myers, which the latter
paid to her without counting it, and Myers also, ac-
companied by the witness, called at Mrs. Myers' resi-

dence on Green Lane. In that month, January, 1912, Myers went to the South and told the witness that he had provided for Mrs. Myers as best he could, and if he could, he would give her the whole damn business. It further appeared that on or about January 18, 1912, the testator gave a $1,000 Richmond & Washington four per cent. bond to Mrs. Myers, which was sold by a broker at the instance of the Commonwealth Trust Company, to which Mrs. Myers gave the bond for that purpose, and the proceeds of said bond, $985.22, were placed by the trust company to the account of Estella D. Myers.

On January 18, 1912, Myers borrowed from the Manayunk National Bank $17,000 on his note, depositing as collateral certain securities and it was practically admitted by all parties that this sum so borrowed was paid over by Myers to Estella D. Myers, though how the payment was made did not affirmatively appear. Mr. Zug, the trust officer of the Commonwealth Trust Company, testified that Myers had previously stated to the witness his intention to make some further provision for Mrs. Myers. On January 24, 1912, Estella D. Myers executed a deed of trust to the Commonwealth Trust Company as trustee in trust to invest the same and pay over the income to her, reserving the right, on ten days' notice in writing, to terminate the trust and to receive back from the Commonwealth Trust Company the said moneys or such proportion thereof as she might request.

On February 6, 1912, Myers, being then in Florida, wrote two letters, one to Estella D. Myers as follows: "Miami, Biscayne Bay, Fla., Feb. 6, 1912. Mrs. Estella D. Myers. Dear Madam: I have improved so much that I have decided to return the money that I left in your keeping thereby avoiding interest on the same and Mr. Preston will arrange with you for the return of the same and give you a proper receipt for same. I have written to Mr. Preston to that effect. Respectfully, Charles E. Myers." The other letter was addressed to Edward H. Preston, the president of the Manayunk National Bank,

as follows: "Miami, Biscayne Bay, Fla., Feb. 6, 1912. Mr. Edward H. Preston. Esteemed Friend: Your letter received, regarding the matter I wrote you about. I have improved so much that I think best to cancel the loan and save the interest expense. The money was placed in Mrs. Myers' care, so that if anything happened to me she would be better provided for. This was purely my own thought and in no way influenced by her. The money is in cash in a box in the safety vault of the Commonwealth Trust Company, Twelfth and Chestnut street. If you will kindly call on her at 170 Green Lane, Myk., and arrange to have her meet you at the trust company and she will return the money to you and you can give her a receipt for the same. You can also send me a receipt for the money stating that the loan has been paid off and that the securities are in your care at the bank. Let the transaction with Mrs. Myers be of a purely private nature so far as any bank proceedings are concerned. Truly yours, Dr. Chas. E. Myers. My address will be Hotel Alcazar, St. Augustine, Florida."

On receipt of this letter Preston sent it to Mrs. Myers, who returned it to him, at which time he had an interview with Mrs. Myers, who was in doubt whether she should pay the money. Mr. Preston told her that it was a matter for her to decide herself, the bank having sufficient collateral for the loan. Mr. Preston testified that he saw Estella D. Myers on another occasion and told her it was for her to determine whether she would pay the money or not. On February 13, 1912, Estella D. Myers revoked the deed of trust of January 24, 1912, by writing delivered to the trustee as follows:

"Philadelphia, Pa. Feb. 13, 1912.

"I hereby exercise the power reserved to me under the deed given by me to the Commonwealth Title Insurance & Trust Company, dated January 24th, 1912, conveying to them in trust the sum of $17,000 in cash, and I hereby terminate said trust and request said company to turn over to me the estate.

"ESTELLA D. MYERS."

In accordance with this notice, the Commonwealth Trust Company, as trustee, gave to Estella D. Myers its check dated February 23, 1912, on Franklin National Bank to the order for $17,000, which was endorsed by Mrs. Myers and given to the Manayunk National Bank, the president of which, Mr. Preston, gave her a receipt as follows: "Philadelphia, Pa., Feb. 23, 1912. Received of Mrs. Estella D. Myers seventeen thousand dollars ($17,000) to be used in payment of loan of the same amount of Charles E. Myers. Manayunk Natl. Bank, by Edw. H. Preston, president." The check was placed to the credit of the account of Charles E. Myers with the bank and was produced at the audit showing the following endorsement: "Pay Myk. National Bank or order Estella D. Myers. Manayunk Natl. Bank, Edw. H. Preston, Presdt. Received payment Feb. 23, 1912, 39. Through the Clearing House." The note was returned with the check drawn against the account and the securities deposited as collateral with the Manayunk National Bank were retained until Myers's death and were then delivered to the executor.

Under these circumstances it was claimed on behalf of Estella D. Myers that her payment of $17,000 to the Manayunk National Bank was not a payment of the loan or a gift to the decedent, but intended as a loan to him to be repaid to her after the decedent returned to Philadelphia, and that Estella D. Myers was entitled to be subrogated to the claim of the Manayunk National Bank as a creditor of the estate.

The facts are certainly unusual and the auditing judge had some doubt whether the testimony disclosed all that existed, but counsel for all parties asserted that no further testimony could be secured. And the auditing judge observes that Estella D. Myers, although competent under the Act of June 11, 1891, P. L. 287, Stew. Purd. 1502, to contradict the testimony of Mr. Preston as to the conversations he had with her in February, 1912, was not called as a witness. It would thus appear

that Myers borrowed $17,000 from the Manayunk National Bank and gave the money to his divorced wife in order to fulfill the moral obligation which he evidently felt to provide for her. With this money she established a trust for herself and reserved the right of revocation. Subsequently, at his request, she, having revoked the trust, paid over the money to his creditor which cancelled the loan, and the money thus went back to its starting place. The question whether the transaction created any indebtedness from Myers to Estella D. Myers is a narrow one, and depends upon the intention of the parties at the time it took place. The facts attending the original payment of $17,000 by Myers to the claimant did not clearly appear, but the auditing judge will assume that the condition existed which is most favorable to the claimant, to wit, that it was an absolute gift by him to her without any obligation whatever upon her part to return the money at any time or for any purpose; and the auditing judge will further disregard as probably incompetent the statements made by Myers in his letter to Preston dated February 6, 1912, to the effect that the payment by him to her was only intended as a temporary provision if "anything happened" to him. This would be a declaration in his own favor after the event and therefore not binding upon her, although apparently the contents of the letter were communicated to the claimant before she acted in compliance with his request to pay back the money. However, it is impossible to disregard the letter of February 6, 1912, from the decedent to the claimant, in which he said to her that he had "decided to return the money that I left in your keeping," for it was upon this letter that she acted in revoking the trust she had created and in paying over the money to the Manayunk National Bank. Furthermore, she accepted from the bank a receipt stating explicitly that the money was to be used "for payment of the loan of the same amount of Charles E. Myers." It cannot be urged that the claimant acted

hastily or without a proper understanding of the transaction. True, she did not consult counsel, but she was in doubt and acted after two conferences with Mr. Preston, who, although not a lawyer, was a mature and experienced business man, president of the bank, who put the matter squarely up to her own decision and apparently did not influence her. Indeed, as the bank was amply secured he had no object to urge her to make the payment. This was the time for her either to have refused to make the payment altogether or to have made it conditionally or to have secured herself by an assignment of the note with or without collateral security, or in some other way; but she did not do so and while she may possibly or probably have made the payment in the hope or expectation that Mr. Myers would make further provision for her in the future, a debt cannot be created in this way, for it requires the meeting of the minds of the parties at the time of the transaction, and therefore a gift cannot be afterwards changed by the donor into a contract or revoked. Thornton on Gifts and Advancements, 101, 105; Wandel's Est., 16 Philadelphia 230. The case is similar in some respects to Fassett's App., 167 Pa. 448, where the facts were more favorable to the claimant than they are in the present case.

The doctrine of subrogation invoked by the learned counsel for the claimant has no application for the reason that the claimant was under no liability for the debt. If she had been so, as for example if she had been an endorser on the note and had paid it, she would be entitled to it against the maker or his estate. The claim of Estella D. Myers is dismissed.

ANDERSON, J., filed the following opinion of the court in banc on exceptions to the adjudication: The evidence shows that moneys raised by a loan created on securities owned by the decedent had been handed by him to the claimant, his former wife, evidently as a donatio causa mortis, he being at that time about to go South for the benefit of his health, she handed the money back so that

this loan might be repaid.   Under these circumstances we think the learned trial auditing judge was clearly right in holding that the payment by her was not a loan to the decedent, but rather the giving back of that which had been given to her voluntarily.

The exceptions are therefore dismissed, and the adjudication confirmed for the reason given by the learned auditing judge.

*Errors assigned* were in dismissing the exceptions.

*Howard M. Cantrell,* for appellant.

*Frank P. Prichard,* with him *Francis S. Cantrell, Jr.,* for appellee.

PER CURIAM, February 8, 1915:

Estella D. Myers was the divorced wife of the decedent.   This appeal is from the disallowance of a claim which she made against his estate.   The peculiar circumstances under which she made it appear in the opinion of the adjudicating judge, and we concur in the view of the court in banc, in dismissing exceptions to the adjudication, that he was clearly right in holding that the appellant had not made a loan to the decedent, but had returned to him that which she had received from him as a voluntary gift.   Appeal dismissed and decree affirmed at appellant's costs.