ARTHUR W. STONE, Admr., *vs.* CHARLES W. CURTIS.

Penobscot. Opinion April 25, 1916.

*General rule of law as to financial transactions between husband and wife, father and son. Burden of proof to establish that such transactions were gifts, rather than loans.*

The plaintiff's intestate was the wife of the defendant. At the date of their marriage, the plaintiff gave his wife two thousand dollars, or more, and it is conceded that some years later he received that sum from her and used the same, with other money, to pay his outstanding debts. They lived together many years after that occurrence, and, so far as the case discloses, the wife never made demand for an accounting, kept no record of the transaction, and at her death in 1913, left no will or memorandum in which the same was mentioned.

*Held:*

1. The defendant in interposing his defense assumed the burden of showing that the transaction was a gift, and not a loan, and it is the opinion of the court that he has maintained that burden. The letters introduced by the

plaintiff furnish ample proof of the attitude of the parties toward the transaction, and the character in which the defendant received the money. They go further and show that he was willing to relinquish to his wife's heirs any rights he had in her property. There is nothing in the case to justify a finding for the plaintiff.

2. Receipt and appropriation by a husband of the wife's money with her knowledge and consent does not establish between them the relation of debtor and creditor, unless at the time he expressly agreed to repay it. In the first letter, the defendant uses the word "'consent;" in the last word "relinquish," to define the attitude of his wife in the premises. In this case the words have the same meaning, and denote an intention to give, and give willingly and unconditionally.

Action of assumpsit to recover certain sums of money alleged to have been loaned by plaintiff's intestate to defendant, her husband. Defendant filed the general issue and brief statement. At the close of the testimony, by agreement of counsel, the case was reported to the Law Court for determination of questions involved, the Law Court to render final judgment in the case. Judgment for defendant.

The case is stated in the opinion.

*Morse & Cook,* and *F. D. Dearth,* for plaintiff.

*Harvey D. Eaton, and Carl Jones,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-BROOK, JJ.

HANSON, J. On report. The plaintiff's intestate was the wife of the defendant. At the date of their marriage the plaintiff gave his wife two thousand dollars, or more, and it is conceded that some years later he received that sum from her and used the same, with other money, to pay his outstanding debts. They lived together many years after that occurrence, and, so far as the case discloses, the wife never made demand for an accounting, kept no record of the transaction, and at her death in 1913 left no will or memorandum in which the same was mentioned.

The plaintiff upon qualifying as administrator acted upon information received from Charles G. Viele, stepson of the defendant, who had written the letter concerning the transaction, and

'had received from him two letters. These letters were introduced by the plaintiff in support of his claim that the transaction was a loan and not a gift.

The action was brought upon the following account annexed:

"DEXTER, MAINE, March 23rd, 1915.
Charles W. Curtis

To Estate of Annie V. Curtis,   Dr.

| | | |
|---|---|---:|
| 1888 July 1st. | To money lent at his request, | $2,000.00 |
| | To interest on same from July 1st, 1888, to March 23rd, 1915, at six per cent per annum, | 3,207.20 |
| | | $5,207.20 |
| | CREDIT | |
| | By interest paid from July 1st, 1888, to July 1st, 1899, | 120.00 |
| | Balance due, | $5,087.20" |

There was also a count for money lent and accommodated by intestate, etc.

The defendant, with the general issue, filed a brief statement in which he set up as a further defense, "that if any sum was ever due the plaintiff's intestate, the same has been paid by the transfer of certain bank stock, to wit, two shares of the Continental National Bank of St. Louis, Missouri, valued at $600, and ten shares of the First National Bank of Dexter valued at $1500."

The defendant offered no evidence as to the transfer of stock, but the plaintiff's attorney introduced testimony which he says proves that while the latter stock was so transferred, it was again used by the plaintiff's intestate, and by her voluntarily assigned as security for a further loan by the defendant at a local bank.

The testimony in relation to the last named transaction when considered alone adds little, if any, weight to the claims of either party, and recognizing this counsel have confined themselves largely to a discussion of the legal effect of the letters in the case, and rightly so. The letters follow:

"PLAINTIFF'S EXHIBIT 1, Charles W. Curtis.

DEXTER, MAINE, March 6, 1914.

Mr. Chas. G. Viele,
Taylorsville, N. C.
*My Dear Mr. Viele:*

Yours of the 2nd inst. is received. I had hoped to find in your expected letter some advice as to how the packages Ada had sent you by express stood the racket of transportation. I have been a little anxious as to the glass reaching you without breakage. Five pkgs. went to Omaha by freight, one of them having frames with the glass in them. Don't expect to hear from these for some weeks yet.

The point in your letter which seems to call for special reply is the postscript pertaining to the $2,000. You probably may not have been fully advised as to my losing my fortune along about '98? In helping to finance a Loan and Investment Company in St. Paul, in which I had some interest, in common with five or six others in Dexter and vicinity, I allowed myself to become guarantor on $8,000 of the Company's paper, just before the panic of '93. Too long a story to this matter to be recited here. I could have avoided paying this $8,000 through insolvency provisions; but I decided to pay it all; taking all I had given your mother with her consent of course, which included the $2,000. It was too humiliating a thought to me to avoid paying all my debts, legal and moral, direct and indirect. By getting credit for $2,000 to be earned later I accomplished my ambition in the matter. At no time however, in my darkest financial days, had I died would your mother have been left without sufficient means for an independent living. Four of our bank directors, all being the most wealthy in the place, lost their fortune at the same time or about same time, that I did mine, and none of them regained any part of the loss.

It required some nerve to put away every dollar and begin at 70 to rebuild one's fortune? I shall need the deed that Ada took to refer to in making quitclaim deed. I asked her to let me take it that I might take such data as I would need for the purpose, but she had it packed in her trunk, and was in a hurry to get ready for an unexpected leaving. Hope I have made the matter plain.

                                        C. W. CURTIS."

"I found some difficulty in getting the money for your mother's last visit south. She proposed to sell her curios for the purpose, she was so much determined to make that visit. I was very fortunate in having a good influential friend. 'A power behind the throne,' who secured me the comparatively good job of Bank Examiner, by holding which till I was near 80 I saved enough to make a respectable patch on my broken fortune. Of the $600 your mother received for bank stock I gave her, she gave a poor widow $100 to enable her to get to the Old Ladies Home in Bangor. She gave freely of her means in other directions.

Very truly,

C. W. C."

"PLAINTIFF'S EXHIBIT 2, Charles W. Curtis.

DEXTER, MAINE, March 9, 1914.

*Dear Mr. Viele:*

I have yours of the 5th inst. enclosing copy of deed, and making inquiry as to consideration for same. As far as my memory goes there was no real consideration passed in the matter. The consideration named in deed seems to be the usual conventional phraseology of lawyers where the consideration is only nominal. There were no conditions made when your mother relinquished what I had previously given her, and this deed was a voluntary act on my part, with the purpose to protect her as far as possible in the event of my passing away first. As the equity which this deed stood for at first gradually lessened, that protection came in another way, and was more definitely provided for in my will made some eight years ago of which the mother was familiar.

I shall be pleased to give you any further information, or details which you may desire. It may interest you to know if you do not already, that I gave your mother a deed of the house soon after her coming to Dexter with the understanding that it should not be recorded during my life time. This deed was destroyed at the time of my liquidating my affairs.

I never regretted the sacrifice I made, (or *we* made) in order to pay the last dollar of my indebtedness, direct and indirect; legal and moral; and I am quite sure your mother quite agreed with me in the matter; certainly in view of subsequent events.

I do not hear from Ada since her getting home and am much surprised at the delay.

When it comes to using copy of deed the Registry Data will be needed.

Very Truly yours,<br>C. W. CURTIS."

Plaintiff's counsel contends that "the letter of the defendant to Mr. Charles G. Viele, dated March 6, 1914, was evidently written in reply to a letter from Mr. Viele to him and clearly shows a loan of two thousand dollars from Annie V. Curtis to the defendant in 1898, and that the transaction was not a gift, for the defendant nowhere in the letter claims that it was."

Viewing the letter of March 6 separately, we are unable to sustain the plaintiff in his contention that it amounted to an admission that the money received by the defendant was a loan, or was considered so by him, or by the plaintiff's intestate. We are very clear that no such admission was made or intended. But if the letter of March 6, standing alone, tended to create a doubt as to the nature and effect of the transaction, a perusal of the letter of March 9th, which must be read and considered with it, will remove all doubt as to the real meaning and force of the words used. The letters reveal, too, a home life and companionship characterized by a mutual interest in all that concerned the home, social, domestic and financial, which excluded the possibility of the existence of the relation of debtor and creditor in this instance.

Counsel urges that the use of the words "with her consent" amounts practically to an admission of liability, and argues, "that there is no attempt on the part of the defendant to claim that when he had the $2,000 it was a gift, but on the contrary, he nowhere claims in his letter that it was such. If it had been a gift and not a loan, he would undoubtedly have said so and then and there tried to end the controversy. The letter having been written by the defendant with some understanding of the claim on the part of Mr. Viele, it seems to us that it should be construed most strongly against him." Mr. Viele wrote the defendant on March 2nd, and again on March 5th, before receiving either letter. The letter of

March 5th was in answer to a direct question as to the considera-
tion for a deed from the defendant to plaintiff's intestate. In
explaining that no consideration passed to him, he added the sig-
nificant and fully explanatory words,—"there were no conditions
made when your mother relinquished what I had previously given
her, and this deed was a voluntary act on my part, with the pur-
pose to protect her as far as possible in the event of my passing
away first."

The defendant in interposing his defense assumed the burden
of showing that the transaction was a gift, and not a loan, and it
is the opinion of the court that he has maintained that burden.
The letters introduced by the plaintiff furnish ample proof of the
attitude of the parties toward the transaction, and the character in
which the defendant received the money. They go further and
show that he was willing to relinquish to his wife's heirs any rights
he had in her property. There is nothing in the case to justify a
finding for the plaintiff.

Receipt and appropriation by a husband of the wife's money
with her knowledge and consent does not establish between them
the relation of debtor and creditor, unless at the time he expressly
agreed to repay it. *Kunn* v. *Stansfield,* 92 Am. Dec., 681 ; *Farmers
and Merchants National Bank* v. *Jenkins,* 65 Md., 249; *Graves and
Baker S. M. Co.* v. *Radcliff,* 63 Id., 591. In the first letter the
defendant uses the word "consent"; in the last the word "relin-
quish", to define the attitude of his wife in the premises. In this
case the words have the same meaning, and denote an intention to
give, and give willingly and unconditionally. See In re Myers'
Estate, 93 Atl. Rep., 818. Pa. Supreme Court, 1915.

*Judgment for the defendant.*