# Maxler *v.* Hawk, Appellant.

*Detinue—Possession—Evidence.*

1. Prior possession is sufficient to sustain detinue by the prior possessor against anyone who cannot show a superior right of possession.

*Gifts—Gift inter vivos—Evidence—Burden of proof—Detinue.*

2. Where the defendant in an action of detinue sets up a gift inter vivos as a defense, the burden of proof is upon him to establish all the facts essential to the validity of such gift.

3. The essential elements of a gift inter vivos are an intention to give, and such actual or constructive delivery of the thing given as places the absolute control or dominion over the gift in the donee.

4. When an alleged donor has been surrounded during his last sickness by the family and relatives of the alleged donee, and the claimant has had opportunities to obtain possession of the subject of the alleged gift without title, the proof in support of the claim ought to be clear and satisfactory upon every point essential to title by gift.

5. The mere fact that a person claiming property as a gift has it in his possession after the death of the alleged donor has little, if any, weight on the question of the gift, where the claimant has had access to the property and effects of the alleged donor during his last sickness, or after his death. Thus where a father claims negotiable bonds as a gift inter vivos from his deceased son, the fact that the father had possession of the bonds immediately after the son's death is to be given little weight where the evidence would justify a finding that the son kept the bonds with his other valuable papers in his father's house where he resided, and that the father had access to such papers.

6. In an action of detinue by an executor against the decedent's father to recover possession of negotiable bonds found in possession of the father after the son's death and claimed by the father as a gift inter vivos from the son, the mere proof that the son had retained the bonds and collected the interest on them until within three weeks of his death does not make out a prima facie case for the plaintiff as to the ownership of the bonds. In such a case if the bonds were negotiable securities, the father, as having possession of them, will be deemed to be in a position of a bona fide holder for value, and before maturity; but very slight circumstances will throw upon the father in such a situation the burden of proving that the bonds were obtained by him bona fide.

7. In an action of detinue to recover bonds claimed by the defendant as a gift inter vivos from his son, the testimony of witnesses as to their having seen bonds in the possession of the father or the son during the latter's lifetime is to be given little weight, where they do not identify the bonds in the possession of the father as the bonds seen by them in the son's lifetime.

8. In such an action it is proper to admit proof of the amount of the son's estate, his indebtedness, that he left a surviving daughter, and the relations of the father and son at the date of, and some time prior to, the death of the latter.

Argued Oct. 3, 1911. Appeal, No. 1, Oct. T., 1911, by defendant, from judgment of C. P. Armstrong Co., March T., 1909, No. 52, on verdict for plaintiff in case of Frank Maxler, Executor of Clarence W. Hawk, deceased, v. Albert A. Hawk. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Detinue to recover possession of thirty-three negotiable coupon bonds. Before REED, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The trial judge charged in part as follows:

[It appears from the undisputed testimony, that Clarence W. Hawk retained these bonds, and collected the interest on them, up until July 1, 1908, and that he died on the twenty-third day of that same month.

Now these facts present what the law terms a prima facie case as to the ownership of those bonds. Unless the defendant by his testimony has overcome this prima facie case, and satisfied you of his contention, that he is the owner of the bonds, it would be your duty to return a verdict in favor of the plaintiff for the value of the bonds, $3,300, with interest from July 1, 1908.] [1]

[It appears that at that time these bonds were not included in the appraisement. It also appears that the estate left by C. W. Hawk, exclusive of these bonds in controversy, amounted to between $14,000 and $15,000, and that he left no debts, except one claim made by the wife of the defendant Mrs. Catherine Hawk, whose claim is $2,000 on a note, on which she has brought suit against the estate. If she recovers on that, it would reduce the value of the estate that amount, and would reduce it to about $12,000 or $13,000, exclusive of these bonds. That is the only claim against the estate so far as the testimony discloses.

After the appraisement was held, it appears that certain papers were handed to the executor by Mrs. Catherine Hawk, the mother of the decedent, consisting of canceled checks and bank deposit books; the executor after looking over these papers and books discovered this check of $3,308, which had been given by the decedent in payment for these Freeport borough bonds. When he discovered that, he went back and demanded these bonds of the defendant A. A. Hawk. He did not deny having the bonds, but claimed to be the owner of them and refused to surrender them. It appears that later on the executor made an-

other demand upon him, and he again refused to give them up claiming that he was the owner of them and that he proposed to hold them. Subsequently this suit was brought by the executor to recover the possession of the bonds.] [2]

[In regard to vesting title in the defendant. The burden is on him to satisfy you that these bonds were actually given to him by the decedent, with the intention that he should have the title to the bonds. That is, that the decedent intended to part with his title to the bonds and all interest in the bonds, and that he actually turned them over, and actually delivered them to the defendant, with the intent of passing title to him and of surrendering all control and dominion over them himself, and of vesting that control and dominion in the defendant.] [3]

[And then the family relation may be such that the possession even of bonds might be easily acquired, and they might be temporarily in the possession of a party, and it would not raise the same presumption as if that relation did not exist.] [4]

[On the other hand, the defendant contends that his evidence, showing that he had had the possession of these bonds some weeks prior to the death of the decedent, raises such a presumptive title to the bonds in him, that the court should peremptorily instruct you to find that title to the bonds is in him, and that you should find for the defendant. We are not prepared to give that instruction and therefore refuse it. I think upon the whole case, it is a question for the jury to determine, and that it is the duty of the court to refer it to the jury.

If you are fully satisfied from all the evidence in the case, that the defendant has overcome the prima facie case presented here by the plaintiff, as to the decedent's ownership of these bonds, and that there was an actual giving of those bonds by the decedent to his father, with the intent to pass the title to the bonds to him, and that they were actually delivered to him, with the intent on the part of the donor or decedent, to surrender all claim to the bonds, and all control and dominion over them, and to

vest them in his father; then we say, that so far as these bonds are concerned, your verdict should be for the defendant, otherwise in favor of the plaintiff.] [5]

Verdict and judgment for plaintiff for $3,773. Defendant appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*Orr Buffington,* with him *S. F. Clark,* for appellant.— As men generally own the personal property they possess, proof of possession is presumptive of ownership: 1 Greenleaf on Evidence, 39; Winlack v. Geist, 107 Pa. 297; Malone's Est., 8 W. N. C. 179.

After the death of C. W. Hawk and when the bonds were demanded by the executor the declaration of ownership made by A. A. Hawk should have been taken as true: Miller's Est., 151 Pa. 525.

*H. A. Heilman,* with him *J. W. King,* for appellee.— The appellee by the undisputed testimony in this case having established that the alleged donor, C. W. Hawk, was surrounded during his last illness by his father and mother, and that A. A. Hawk had opportunity to obtain possession of the bonds without title, the proof in support of his claim should be clear and satisfactory upon every essential to title by gift: Scott v. Reed, 153 Pa. 14.

If the appellant relies upon possession and ownership by reason of a gift, then it was incumbent upon him to prove by competent testimony every essential necessary to make a valid gift inter vivos: Rhodes v. Childs, 64 Pa. 18; Fross' App., 105 Pa. 258; Walsh's App., 122 Pa. 177; Pryor v. Morgan, 170 Pa. 568; Reese v. Philadelphia Trust Safe Dep. & Ins. Co., 218 Pa. 150.

If there is evidence of undue influence or of circumstances giving rise to suspicion touching the transaction itself, the burden is upon the donee to show the fairness of the transaction: Vaughn v. Vaughn, 217 Pa. 496; Worrall's App., 110 Pa. 349; Simon v. Simon, 163 Pa. 292.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

This is an action of detinue, the plea being non detinet, brought by Frank Maxler, executor of Clarence W. Hawk, deceased, against Albert A. Hawk, his father, to recover, inter alia, thirty-three negotiable coupon bonds, of the par value of $100 each, issued by the borough of Freeport, Pa. It appears by the plaintiff's evidence that the decedent had purchased the bonds in 1904 and collected the interest on them semiannually, payable on the first days of January and July, until July 1, 1908, the last interest-paying period prior to his death which occurred July 23, 1908. C. W. Hawk was married about ten years before his death, but his wife died within a short time after their marriage, when he returned to the home of his father and mother and continued to reside there until his death. The parents and their son lived in the same house, occupied the same living room, ate at the same table, and the son kept at least a part of his private papers in a drawer in the table in the sitting room occupied in common by the decedent and his parents. Some time after the death of her son, his mother handed to the appraisers of his estate checks, bank books, etc., which had been taken from a table drawer in the sitting room of their home. The will of the decedent was found in the possession of his father, the defendant.

The defendant claimed the bonds by a gift inter vivos. To prove the gift he introduced evidence to show that they were kept by the decedent in a safe deposit box in a bank in Freeport where the parties lived, that at the semiannual interest-paying periods the decedent would open the box, cut the coupons and secure the borough treasurer's check for the interest, that he continued this practice until July 1 or 2, 1908, the last interest-paying period prior to his death. The defendant called as a witness Howard Smith, the decedent's brother-in-law, who testified that on July 4 or 5, 1908, in a conversation with the decedent, the latter, referring to some unintentional injury said to have been done by him to his

father, remarked: "I have fixed that," and that on the following Monday the defendant came into his sitting room and exhibited the bonds to Mr. Smith. The defendant contends that these alleged facts together with his possession of the bonds after the death of his son show that the title and possession of the bonds had passed to him by the gift of his son prior to the latter's death.

It will be observed that the only question in the case is whether the decedent had made a gift inter vivos to the defendant of the bonds in question. The issue raised by the pleadings required the plaintiff to show title to the bonds in the decedent. This he attempted to do by showing that he purchased the bonds in 1904 and collected the interest on them semiannually until the last semiannual interest-paying period prior to his death. Prior possession is sufficient to sustain detinue by the prior possessor against anyone who cannot show a superior right of possession: 14 Cyclopedia of Law & Procedure, 251. The plaintiff also attempted to show the mala fides of the defendant's possession of the bonds by showing the declarations of the defendant, the relationship of the parties, the manner of their living, and the probabilities that the bonds were kept in the same place at the common home of the decedent and his parents where his other papers were kept and which were found in the possession of his father and mother, thus disclosing their access to the bonds during his last illness and after his death. If the plaintiff's testimony was believed, the jury was warranted in finding that the prima facie ownership of the bonds which arose from defendant's possession of them after decedent's death had been rebutted.

The defendant setting up a gift inter vivos as a defense, the burden was upon him to prove it. The burden of proof is on the one claiming to be the donee of property to establish all the facts essential to the validity of such gift: 20 Cyclopedia of Law & Procedure, 1219. There was no direct evidence of the gift of the bonds to the defendant

and he relied upon circumstantial evidence to sustain his defense. All the evidence tending to sustain or defeat the gift was therefore competent. This includes proof of the amount of C. W. Hawk's estate, his indebtedness, that he left a surviving daughter, and the relations of the parties at the date of, and some time prior to, the death of the son. All these matters bore upon the intention of the son to make a gift of the bonds under the circumstances: Burkholder v. Plank, 69 Pa. 225; Hasel v. Beilstein, 179 Pa. 560; 14 Am. & Eng. Ency. of Law (2d ed.), 1050. It was therefore proper for the learned court to refer to and instruct the jury in its charge on this testimony.

There is no merit in the third assignment of error. The complaint in that assignment is that the court erred in instructing the jury that the burden was on the defendant to satisfy the jury that the bonds were actually given to him by the decedent with the intention that he should have title to them. The essential elements of a gift inter vivos are an intention to give and such actual or constructive delivery of the thing given as places the absolute control or dominion over the gift in the donee. The defendant certainly has no reason to complain of the quantum of proof required by the trial court to support the gift. The learned judge might have gone farther than he did and told the jury that the proof of the gift should be clear and convincing. Such degree of proof is required by our cases, and especially where the gift is alleged by the donee to have been made under the circumstances present in this case. The gift must have been made, if at all, between July 1, 1908, when it is conclusively shown the decedent had possession of the bonds, and the 23d of that month when he died. In the meantime he was living with his father and mother and was suffering from tuberculosis from which he died. "When an alleged donor," says HEYDRICK, J., in Scott v. Reed, 153 Pa. 14, 15, "has been surrounded during his last sickness by the family and relatives of the alleged donee, and the claim-

ant has had opportunities to obtain possession of the subject of the alleged gift without title, the proof in support of the claim ought to be clear and satisfactory upon every point essential to title by gift."

There was no error in the language used by the court which is the subject of the fourth assignment. It should be read in connection with the other parts of the charge bearing upon the same subject. When he used the language, the learned judge was discussing the defendant's contention that his possession was prima facie evidence of ownership of the property. The jury was so instructed, and that such possession might be very strong or very weak evidence of ownership, "depending upon the facts and circumstances surrounding the possession, and the character of the property and the length of time that possession is continued." It was in this connection that the language of the charge, covered by the fourth assignment, was used. The mere fact that a person claiming property as a gift has it in his possession after the death of the alleged donor has little if any weight on the question of a gift, where the claimant has had access to the property and effects of the alleged donor during his last sickness, or after his death: 14 Am. & Eng. Ency. of Law (2d ed.), 1050, and cases cited in note. It has been held in New York that the mere possession of property is not sufficient evidence of a gift, for it may be consistent with a mere custody or agency: Matter of Bolin, 136 N. Y. 177. In the case in hand the jury would have been justified in finding, as already suggested, that the bonds were kept with decedent's other valuable papers which were subsequently found at the home of his parents where he also resided. They were therefore as readily accessible to the father, the defendant, as the decedent's other papers, and under such circumstances their possession by the defendant would necessarily have very little weight with the jury in determining whether the son had delivered them to his father.

The learned counsel for the appellant seem to misap-

prehend the effect of some of their client's testimony which was introduced to meet the plaintiff's prima facie ownership of the bonds in question. Smith's testimony did not show that the decedent made a gift of the bonds in discharge of a legal or moral obligation. The declaration made by him in Smith's presence, as testified by the latter, cannot be construed as showing any intention to make a gift. As testified by the witness, the declaration was "without any explanation as to what he (decedent) meant or what he did." Nor did Smith testify that the defendant showed the bonds in question to him on the occasion referred to in Smith's testimony. He testified that the bonds shown him were Freeport bonds, of $100 value each, that the roll of papers in the defendant's hands containing the bonds corresponded with the roll of bonds in question which were present in court. But he admitted on cross-examination that he did not know the numbers of the bonds as he did not examine them, that he thought they were signed by R. P. Thompson, that he did not know how many there were of them, and that they were rolled up in a paper. This was not such an identification of the bonds as would, under the other evidence in the case, have warranted the jury in finding that the defendant on that occasion had possession of the bonds in controversy. The testimony of Mr. Johnson, the cashier of the bank, does not definitely show that these bonds were ever in the decedent's safe deposit box in the bank, as claimed by the defendant. Johnson testified that the decedent had a box in the bank where he deposited his papers, that he would come to the bank to get Freeport bonds and cut the coupons, and would get the borough treasurer's check given in payment of the coupons cashed at the bank. On cross-examination, however, he distinctly testified that he never saw the bonds in question in the decedent's safe deposit box, that he never saw him take the bonds out of the box and that he never saw him cut the coupons from the bonds. This testimony fails to identify conclusively the bonds kept by

the decedent in his safe deposit box as the bonds in controversy in this suit.    In connection with other testimony it was evidence for the jury, but not conclusive, that the decedent did keep the bonds in this box.

There was technical error in that part of the charge which is the subject of the first assignment, and for that reason the judgment must be reversed.    The learned court told the jury that it appearing from the undisputed testimony that Clarence W. Hawk retained the bonds and collected the interest on them until July 1, 1908, the plaintiff had made out a prima facie case as to the ownership of the bonds.    The learned judge tried the case upon this theory, while the plaintiff's counsel tried it upon a different theory.    They showed by undisputed testimony the decedent's prior ownership of the bonds and then proceeded in chief to introduce evidence to rebut the presumption of the defendant's prima facie ownership arising from his possession of them.    The plaintiff's counsel did not rely simply upon the prior ownership to enable him to recover but sought to show the mala fides of the defendant's possession.    As already suggested, there was sufficient evidence on the part of the plaintiff discrediting the defendant's ownership to warrant the court in sending the case to the jury.    If, however, the plaintiff had merely shown the purchase and possession of the bonds by the decedent and rested, he would not have made out a prima facie case.    The bonds which he seeks to recover are coupon bonds, payable to bearer.    They were negotiable securities, transferable by delivery, and being in the defendant's possession he is deemed, prima facie, to be a bona fide holder, for value and before maturity.    The defendant's possession is prima facie evidence of ownership, because the presumption is that it was honestly acquired: Per WILLIAMS, J., in Robinson v. Hodgson, 73 Pa. 202, 210.    Hence the mere fact of the prior ownership by the plaintiff was not sufficient in itself to establish the prima facie ownership of the bonds in the plaintiff and to warrant the jury

in so finding in this action. While therefore the instruction complained of in the first assignment was technical error, the learned court, as we have already indicated, was right in submitting the case on all the evidence to the jury. There was sufficient evidence, if believed, to rebut the prima facie ownership arising from the possession and to cast the burden on the defendant of showing, under the circumstances existing here, that the decedent had made a gift to him of the bonds. In such cases, the burden of proof that negotiable securities were obtained bona fide, in the usual course of business, is thrown on the party alleging it by very slight circumstances: Porter v. Gunnison, 2 Grant, 297. On proof of the loss or larceny of negotiable paper, the holder must affirmatively show that he took it in the usual course of business for value: Kuhns v. Gettysburg National Bank, 68 Pa. 445. Here the jury would have been warranted in finding from the plaintiff's evidence in chief that the defendant was not a holder of the bonds in due course but that they came into his possession mala fides. While therefore the learned judge should not have told the jury that the prior ownership of the bonds by the decedent made out of itself a prima facie case for the plaintiff, he should have submitted to the jury to determine whether the plaintiff had rebutted the presumption of bona fide ownership arising by reason of the defendant's possession, and if so whether the defendant had established a gift of the bonds to him made by the decedent in his lifetime.

The first assignment of error is sustained, and the judgment is reversed with a venire facias de novo.