The petition to vacate the order of remand is denied.

## In re Grant.

*Knight, Taggart, Klein & Reich,* for petitioners.
*Cloyd Steininger,* for respondent.

LLOYD, J., April 14, 1930.—Upon the petition of George E. Grant and Mary A. Grant, his wife, a rule issued on Amy E. Grant, administratrix of Charles H. Grant, to show cause why the court should not make an order certifying that a certain mortgage should be marked satisfied by the register and recorder, upon the payment of the proper costs of satisfaction. An answer, responsive to the petition, was filed. Testimony on behalf of both the petitioners and respondent was received.

From the pleadings and the evidence we make the following

### Findings of fact.

1. That on March 6, 1922, George E. Grant and Mary A. Grant, the petitioners, made, executed and delivered to Charles H. Grant, of the Borough of Northumberland, their bond and mortgage to secure the payment of $2000, covering a property situate at the corner of Second and Race Streets, in the City of Sunbury, Pennsylvania, and being fully and particularly described in the said mortgage.

2. That in the year 1925 the said Charles H. Grant signed and sealed the following endorsement upon the mortgage:

"In the event of my death, I direct that this mortgage which I hold against my brother, Geo. E. Grant, for his Race Street property shall be satisfied.

"(Seal)                                             Witnesses
   "C. H. GRANT                                   JAMES W. SCOTT.
                                                  CHAS. A. DENT."

3. That the signature of Charles H. Grant on the said endorsement was actually witnessed by Charles A. Dent, who, at the request of Charles H. Grant, signed his name as a witness thereto.

4. That James W. Scott also, at the request of Charles H. Grant, became a witness to his signature.

5. That subsequently to said endorsement, but in the year 1925, the following endorsement at the request of Charles H. Grant was also added:

"In the event of the death of Charles H. Grant, we hereby forfeit any claim that we might have in this mortgage.

| | | Witnesses |
|---|---|---|
| "(Seal) | ELIZABETH D. GRANT | |
| "(Seal) | ANNIE GRANT | CLINTON D. GEIST |
| "(Seal) | EDITH G. DEWART | JOHN P. SHINDEL." |

6. That Elizabeth D. Grant, Annie Grant and Edith G. Dewart, sisters of Charles H. Grant, signed and sealed the latter endorsement at his request.

7. That at the time when the latter endorsement was signed Charles H. Grant said "that he wanted George to be free of anything of that kind when he passed out;" "I don't want to make George any trouble or for him to have any trouble after I pass away."

8. That immediately following the latter endorsement Charles H. Grant handed the mortgage to George E. Grant.

9. That the debt secured by the mortgage was not discharged by the actual payment of money.

10. That the said mortgage has been in the possession of George E. Grant since it was delivered to him in 1925 by Charles H. Grant.

11. That Charles H. Grant died intestate June 19, 1929.

12. That on July 2, 1929, letters of administration were duly granted to Amy E. Grant as administratrix.

## Discussion.

This is a proceeding under the Act of April 11, 1856, P. L. 304, which stipulates:

"That hereafter in all cases where the amount due on any mortgage or judgment entered of record, together with interest and cost, shall have been paid to the legal holder or holders thereof, and the judgment bond, or note, or mortgage, together with the accompanying bonds, if any, duly endorsed in the presence of two witnesses, that the same are satisfied and discharged, shall be produced to the prothonotary or recorder having charge of the records of such mortgages and judgments respectively, it shall be the duty of such officer, for the fee of seventy-five cents in the case of a mortgage and twenty-five cents in the case of a judgment, to enter satisfaction on the record of such liens, and to file among the papers in their respective offices the judgment, notes, bills, mortgages and bonds respectively, which shall remain filed thereafter, for the benefit of all parties interested therein: Provided, that no such satisfaction shall be entered until after a certificate from the president judge or the district judge of the proper county, allowing the same, which certificate shall also be produced and filed with the papers as aforesaid."

The respondent originally contended that this legislation does not contemplate the satisfaction of a mortgage when the payment thereof is founded upon a gift, and, second, that the endorsement on the mortgage did not constitute a payment thereof, in that it failed to meet the requirements of a gift *inter vivos*. The first contention has been abandoned, and thus the issue is narrowed to a determination of the second contention.

The precise question to be determined is whether the delivery of the mortgage under the circumstances here shown is sufficient to establish a gift *inter vivos*. The following cases are illustrative of the requirements and the nature of the proof:

In Kaufmann's Estate, 281 Pa. 531-533, the court held:

" 'To make a valid gift *inter vivos* there must be a clear, satisfactory and unmistakable intention of the giver to part with and surrender dominion over the subject of the gift, with an intention to invest the donee with the right of disposition beyond recall, accompanied by an irrevocable delivery:' Packer *v.* Clemson, 269 Pa. 1, 3. The absolute control must be vested in the donee (Maxler *v.* Hawk, 233 Pa. 316; Ashman's Estate, 223 Pa. 543), and if all dominion is not divested, the proposed gift is incomplete: Walsh's Estate, 122 Pa. 177. There is no presumption of any intention to give (McConville *v.* Ingham, 268 Pa. 507), and the purpose to do so, followed by an actual or constructive delivery, must be shown (Yeager's Estate, 273 Pa. 359), and the burden of proving both of the necessary elements rests on the alleged donee: Maxler *v.* Hawk, *supra;* King *v.* King, 273 Pa. 351. The *quantum* of testimony required is not, however, so great where, as here, the relation of parent and child exists: Northern Trust Co. *v.* Huber, 274 Pa. 329; Yeager's Estate, *supra.* In any case, if the transfer is shown to be complete and the holding is alleged to be on condition, the burden then shifts to the one so asserting: Crosetti's Estate, 211 Pa. 490. Mere admissions of a transfer, or declarations by a donor of an intent to do so, are not necessarily sufficient: Leitch *v.* Diamond National Bank, 234 Pa. 557; Wise's Estate, 182 Pa. 168; Herr's Appeal, 5 W. & S. 494; 28 Corpus Juris, 681. Once the gift has been legally established, the mere fact that access to the box, at the place of deposit, is given the former owner will not change the character of the transaction: Reese *v.* Phila. T., S. D. & I. Co., 218 Pa. 150; Cooper's Estate, 263 Pa. 37; Beaumont *v.* Beaumont, 152 Fed. Repr. 55.

"Prior to complete surrender, the donor may alter his intention and retake the subject-matter of the gift into his own possession (Cooper's Estate, *supra),* or, thereafter, the donee may return it, thus releasing any right of ownership: Myers's Estate, 248 Pa. 76. In the instant case, the notes and stocks were admittedly at one time owned by the father and were found in his possession at the time of death. In law there is a presumption of the continuance of conditions once shown to exist, and the ownership of property proven to be in one is supposed to remain there until the contrary is made to appear: McConville *v.* Ingham, *supra;* Hartman *v.* Pittsburgh I. P. Co., 11 Pa. Superior Ct. 438. As a result, if the possession of the property is found in the hands of the donor, the law will assume he retained title: Campbell's Estate, 7 Pa. 100; Reading Trust Co. *v.* Thompson, 254 Pa. 333. Likewise, if the donee has the possession of property, delivered without proof of explanatory words limiting his interest, a transfer of ownership is to be understood: Yeager's Estate, *supra;* Northern Trust Co. *v.* Huber, *supra.*

" 'One in possession of property is presumed to be the owner of it. As making more definite and significant the nature of the person's custody or occupation, and as giving it the significance of an exclusive control and of a possession in the fullest sense, the acts and declarations of claim of title by the occupant may be decisive, and should, therefore, be considered for that purpose, without, however, conceding to them any force as hearsay assertions:' 3 Wigmore on Evidence (2nd ed.), § 1779, page 799. 'The act of delivery or receipt may be in itself entirely ambiguous, if not meaningless. To make the act intelligible, to give it point and certainty, to indicate with clearness its

legal consequences, it is quite necessary to know with what animus the act is done. Where, therefore, . . . negotiable or written instruments or the like are shown to have been delivered or received, an extra-judicial statement showing the intent or intention with which the act is done is also regarded as admissible. . . . The existence of a previous mental state to an effect different from that with which it is claimed a given delivery was made may be an independently relevant fact and be shown by the extra-judicial declarations of the grantor:' 4 Chamberlayne on Evidence, § 2664.

"Self-serving statements are ordinarily not receivable to establish title in the one making them, unless in the presence of the adverse party: Wonsetler v. Wonsetler, 23 Pa. Superior Ct. 321. The previous declarations, which indicate an intent to give, or the lack of such purpose, are receivable in evidence: Campbell's Estate, 274 Pa. 546; Sherman v. Stoner, 78 Pa. Superior Ct. 189. And where the party is in actual possession, his statements are admissible to show title to the property in him: Scheid v. Storch, 271 Pa. 496. Such evidence has been considered in a number of cases which have come before us where the question of a possible gift has been involved."

In Hafer v. McKelvey, 23 Pa. Superior Ct. 202, 204, it was said:

"While a gift needs no consideration to support it, yet the conditions surrounding the donor and donee are frequently cited to interpret the intention of the parties, and if they are competent to give and competent to receive and the transaction is completed by a voluntary transfer of possession, it is regarded by the law as an executed contract. See Pryor v. Morgan, 170 Pa. 568. . . . To make a valid gift there must have been not only an intention to make it but to do so at the time and not in the future, and it must be accompanied by an actual or constructive delivery to the donee by which the donor released all dominion over the property and invested the donee with full title to and control over the same. Without a complete delivery there can be no valid gift inter vivos, though every step be taken that is essential to the validity of the gift; if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite without which the gift fails, regardless of consequences, and the test of delivery is the change of property, the immediate right to the entire dominion over the subject of the gift, a perfect title which is as good against the donor as anyone else."

The sufficiency of the delivery of the mortgage to the petitioner, George E. Grant, cannot be questioned. It was actually placed in his hands by the mortgagor, Charles H. Grant, and possession thereof retained until the present time. What, then, was the intention of the donor in thus presenting to and delivering possession of the mortgage to the donee and what was the extent of the gift, if any, he intended to make? Clearly, to fulfill the purpose indicated by his statement when he said in the presence of his sisters at the time of the delivery of the mortgage that he wanted "to make a gift of this mortgage to his brother George;" "that he wanted George to be free of anything of that kind when he passed out;" "I don't want to make George any trouble or have him to have any trouble after I pass away." That he intended to vest absolute control of the mortgage in the donee is evidenced by the fact that he also requested his sisters, whom he doubtless felt might have an interest therein, to waive all their claim by an appropriate endorsement thereon. Adding to this the strength to be derived by his own endorsement and delivery, there can be no question concerning the legal effect of the transaction. We have a clearly expressed purpose to make a present gift, followed by a sufficient delivery. The legal requirements are met, and upon this showing the gift would

have to be sustained and the inquiry could well end here but for the argument of the respondent that the phrase "in the event of my death," as contained in the endorsement of Charles H. Grant, impresses such a condition on the transfer as to destroy its irrevocability and is thus effective to prevent its operation as a gift *inter vivos*. The decisions do not so hold. The phrase imposed no condition. Its only effect was to postpone the day of satisfaction. The authorities are numerous, but the following citations are sufficient to show the futility of the argument.

In Wagoner's Estate, 174 Pa. 558, the court, in discussing a similar contention, said:

"But did the contingency that the gift was not to take effect except in case of the survivorship of the niece render it void? . . . The delivery to the trustee for purposes of the trust was absolute; if the niece survived him, the bond was to be delivered to her; if the remote contingency that the aged uncle survived the niece happened, doubtless it was his secret intention, if that contingency occurred to him, the bond should be redelivered to him; but he annexed no such reservation to the trust; he retained no such control or dominion over it in the meantime; the death of either determined only the duty of the trustee. . . . The delivery to him [Skiles] was a good delivery to her. . . . 'Where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. . . .' We are clearly of the opinion that . . . the enjoyment of the subject [of the gift] having passed completely out of his [the donor's] control, that control could only be resumed by him on the happening of the same contingency."

In Mack's Appeal, 68 Pa. 231, the court held:

"A man may give a present bond to pay a sum of money at his death, and a delivery of it to the obligee renders it perfect as a present obligation though payable at a subsequent, whether a fixed or an uncertain, period to be afterwards ascertained and made certain. It is strictly *debitum in presenti solvendum in futuro*, and is as irrevocable as any other obligation under seal, which in law imports consideration."

The case of Collins *v.* Central Trust Co., 231 N. Y. Supp. 251, although of foreign jurisdiction, is in point. In that case it appears that a bond and mortgage had been delivered by the mortgagee to the mortgagor in the presence of a witness. At the time of the delivery the mortgagee gave to the mortgagor a receipt for the amount of the mortgage, the said receipt containing the words "legal only at my death." The mortgagee died and an action was brought to compel the discharge of the mortgage. The mortgagor claimed the transaction was a valid gift, while the executor contended that it was testamentary in character and, hence, void. The court, in discussing the contention, said:

"It seems to me that decedent intended to give this debt to the plaintiff, and that he did everything necessary to do this is beyond contradiction. It was not necessary to discharge the mortgage in order to extinguish the debt. . . . There can be no doubt that he desired to refrain from discharging the mortgage of record until some future time, and, equally without doubt, he had this in mind when he added the words, 'Legal only at my death,' to the receipt just below his signature. As above suggested, the receipt, no matter what its contents, was not essential to the forgiving of the debt, nor did it in my mind impose such a condition as to make the transaction testamentary, as

claimed. . . . The intent of the testator was to forgive the debt, extinguish it, and resolve it solely in favor of the plaintiff at the time that he delivered the bond to her. The purpose of the receipt was doubtless to confirm and make stronger the delivery of the bond; and the words endorsed under the decedent's name in no way modified or made void the clear and unequivocal intent and meaning of the words above it, or the words and acts of the transaction connected with the delivery of the bond, but were doubtless intended by the decedent to provide only for the deferring of the formal discharge of the mortgage. . . . In such case, a direction or covenant to delay entering the discharge of the security could not keep the debt alive and would be of no legal effect."

Of like effect is the case of Funston *v.* Twining, 202 Pa. 88:

"Where one person gives to another the principal of a mortgage debt, and delivers at the same time the bond and mortgage securing the debt, the gift is not rendered invalid by the fact that the donor says to the donee at the time of the delivery of the papers, 'All I ask is that you pay me four per cent. interest while I live, and then it is yours when I die.'"

It is thus apparent that the phrase used in the endorsement was not effective to destroy the irrevocability of the gift nor to render the gift, otherwise valid, invalid.

From the facts as found we arrive at the following

## Conclusions of law.

1. That Charles H. Grant made a valid gift of the said mortgage to George E. Grant and Mary A. Grant, his wife.

2. That the principal debt secured by the said bond and mortgage was paid and duly discharged.

3. That the said Charles H. Grant has duly endorsed the said mortgage to be satisfied in the presence of two witnesses.

4. That satisfaction of the present mortgage is such as is contemplated by the said Act of April 11, 1856, P. L. 304, and the requirements thereof having been met, a satisfaction should be entered by the recorder subject to the payment of proper fees.

5. That the certificate of the court allowing the said satisfaction should issue to the recorder.

## Decree.

And now, April 14, 1930, it is hereby adjudged, declared and decreed that the certificate of this court shall and does herewith issue to the Recorder of Deeds and Mortgages in and for the County of Northumberland, allowing a satisfaction of the mortgage of George E. Grant and Mary A. Grant, his wife, to Charles H. Grant, dated March 6, 1922, to secure the payment of $2000, covering the following described premises:

All that certain lot or piece of ground, situate in the City of Sunbury, County of Northumberland and State of Pennsylvania, bounded and described as follows, to wit:

Beginning at the northeast corner of Second and Race Streets in said city; thence northward along the eastern side of Second Street a distance of seventy-five (75) feet to a point; thence eastward along the division line between lots number four and five in Greenough's Addition a distance of forty-five (45) feet to a point; thence southward at right angles to Race Street a distance of seventy-five (75) feet to the northern side of Race Street; thence westward along the northern side of Race Street a distance of forty-

five (45) feet to the place of beginning, being the western portion of lots number five (5), six (6) and seven (7) in said addition, whereon is erected a frame dwelling house. Being a part of the same premises which Marcy C. Greenough and Eben W. Greenough conveyed unto the said George E. Grant by deed dated Feb. 9th, and recorded in Northumberland County in Deed Book No. 132, page 64, and by deed dated May 4, 1896, and recorded in Deed Book No. 132, page 63, and by deed dated Feb. 10, 1898, and recorded in Deed Book No. 133, page 132, and recorded on March 10, 1922, in Mortgage Book 108, page 111, upon the payment to him of a fee of seventy-five cents.

An exception is noted and a bill sealed for the respondent.

From C. M. Clement, Sunbury, Pa.