Henes, Appellant, *v.* McGovern, Admr.

Argued December 5, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. Horace Hepburn, Jr.,* for appellant.

*Daniel B. Nodler,* with him *Abraham J. Levinson,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 14, 1935:

Owen McGovern after living with his wife (who still survives) about 23 years, separated (without divorce) from her and their eight children in 1913, and sometime later took up his abode with the plaintiff, Alice E. Henes. There is some evidence that he began to live with Mrs. Henes in 1917, and some that the relationship began at a later date. Mrs. Henes is a widow, whose husband died in 1910. She then had five children of her own. In later years she became the mother of four or five children by

McGovern. On May 2, 1931, when McGovern was about 64 years of age, he had a paralytic stroke which affected him on the right side. From that date to his death on December 19, 1931, he was confined to his bed in the house where he and Mrs. Henes resided. He was attended by Dr. Kraus, both prior to the stroke and after, and until the date of his death. This physician was also president of the Richmond Trust Company, where the decedent had a considerable sum of money on deposit in a savings fund.

From time to time the decedent withdrew through the agency of Dr. Kraus certain sums of money from this fund, executing withdrawal notice or receipt therefor by means of a mark. The sums so withdrawn were taken from the decedent's account and delivered to him by Dr. Kraus. In September, 1931, decedent insisted upon withdrawing the entire sum remaining on deposit in his account. To this end he gave two weeks' notice and at the expiration thereof the entire balance in the account, to wit, $13,700, was withdrawn by Dr. Kraus and delivered to the decedent. The bank was closed about twelve o'clock on the same day by the state secretary of banking.

On the evening of the same day the decedent in the presence of three adult daughters of the plaintiff, by her early and only marriage, withdrew (so it is alleged) fifteen bundles of money from beneath the pillow of his bed with his left hand (his left arm not being affected by the paralysis) and handed the packages of money, one by one, to the plaintiff, saying: "This is a gift for you. You take it. You have been good to me. See that nobody else gets a penny of it." This act was testified to by Agnes McGarvey, Mary Conrad, and Alice Roth, all daughters of plaintiff (but no relation to McGovern). The next day, the decedent, according to the physician's testimony, told him that he had given the money to the plaintiff. This testimony was not directly controverted, although there was evidence that the deceased later, i. e., on October 12th, told his brother and his children that his

money was "tied up" in the above mentioned bank which had then been closed.

On September 14, 1932, litigation was instituted by the administrator in the interest of McGovern's lawful wife and six surviving legitimate children. On that date Mrs. Henes had in her possession $6,000 of this original sum of $13,700, the rest of it having been, as she said, "used up." The Orphans' Court of Philadelphia ordered her to pay that remaining sum of $6,000 into court. A precept was then directed to the court of common pleas to try the issue whether this sum came into the possession of Mrs. Henes as a gift from McGovern during his lifetime. The court directed that in that issue "Alice E. Henes shall be plaintiff and have the affirmative in the burden of proof and the administrator shall be defendant." On the issue submitted to the jury by this precept in the orphans' court the case was first tried on November 14, 1933, and the jury found in favor of the defendant. On December 18th, a new trial was granted. This was had on February 19, 1934, and a verdict was again rendered for the defendant. Plaintiff's motions for a new trial and for judgment n. o. v. were both refused. This appeal followed.

The first alleged error stressed by appellant is assignment of error No. 6, to wit, that the issue was improperly framed. This court would be justified in not considering this assignment for the reason that it does not appear in the record that any objection was made to the manner in which the issue was framed nor any exception taken. We have repeatedly held that questions not raised in the lower court will not be considered on appeal. See Webster's Est., 314 Pa. 233, 235, 171 A. 568; Hurt v. Fuller Canneries Co., 263 Pa. 238, 241, 106 A. 248. It has been held in other jurisdictions that even where the burden of proof was rightfully on the defendant, yet where the lower court placed it upon the plaintiff, the error of the lower court cannot be complained of upon appeal in the absence of an objection to the court's ruling. See O'Far-

rel v. Metropolitan Life Ins. Co., 22 App. Div. (N. Y.) 495, 48 N. Y. S. 199; Kelly v. Adams Express Co., 134 Ky. 208, 119 S. W. 747. However, we deem it proper to say that if there was any error in the framing of the issue in this case, the error was one of *form* and not of *substance* because no principle is better settled in the law than that the burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of such gift. This court said in Maxler v. Hawk, 233 Pa. 316, 323, 82 A. 251: "The complaint . . . is that the court erred in instructing the jury that the burden was on the defendant to satisfy the jury that the bonds were actually given to him by the decedent with the intention that he should have title to them. The essential elements of a gift inter vivos are an intention to give and such actual or constructive delivery of the thing given as places the absolute control of dominion over the gift in the donee. . . . The learned judge might have gone farther than he did and told the jury that the proof of the gift should be clear and convincing." In Gongaware's Est., 265 Pa. 512, 515, 109 A. 276, this court said in an opinion by Mr. Justice SIMPSON: "The burden of proving a gift . . . is upon those who allege it." In the Reading Trust Co. v. Thompson, 254 Pa. 333, 336, 98 A. 953, this court said in an opinion by Mr. Justice WALLING: "The affidavit of defense substantially admits the ownership and possession of these bonds in Alexander about six weeks prior to his death. The only title which defendant sets up is an alleged parol gift at that time, and, under the circumstances of this case, the burden was upon him to make proof thereof." In McConville v. Ingham, 268 Pa. 507, 112 A. 85, this court said in an opinion by Mr. Justice SIMPSON: "In the present instance, however, the question as to whether or not there was a gift, was the initial inquiry and the storm center of the controversy. Upon this point the burden of proof was on defendant [i. e., the alleged donee] and not upon the plaintiff (nemo praesumitur donare), not only because the original own-

ership of plaintiff is presumed to continue . . . but also because the defense is an affirmative one, which necessarily carries with it the burden of proof." To the same effect are Sullivan v. Hess, 241 Pa. 407, 88 A. 544; In re Smith, 237 Pa. 115, 85 A. 76, and Hafer v. McKelvey, 23 Pa. Superior Ct. 202. "A gift inter vivos must be strictly alleged and proved, and particularly delivery by the donor with intent to vest title in the donee": 28 C. J., section 70, page 668. In Wise's Est., 182 Pa. 168, 37 A. 936, this court held in an opinion by Mr. Justice MITCHELL: "Transactions by which a decedent shortly before his death practically strips himself of all his available property are naturally regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye."

Appellant cites Miller's Est., 151 Pa. 525, 25 A. 144, which arose on exceptions to report of an auditor appointed to distribute the estate of decedent. The auditor accepted as true the testimony of the donee that the gift had been made to her. Exceptions to his findings were dismissed and this court in a per curiam opinion affirmed the decree of the court below. In the opinion of the *court below* appears this statement: "Possession of the money at the date of his death being in Mrs. Gilmore, the presumption that she owned it would follow." This is not the law in this Commonwealth nor apparently elsewhere.

Yeager's Est., 273 Pa. 359, 117 A. 67, was a case involving the validity of a gift inter vivos between father and daughter. This court said in an opinion by Mr. Justice SADLER: "The quality and quantity of proof required to meet this obligation varies greatly, depending upon the circumstances of the particular case. Where the parties are strangers, the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. If the gift is from husband to wife (Crosetti's Est., 211 Pa. 490 [60 A. 1081]), or parent to child (Langdon v. Allen, 1 W. N. C. 395), the action of the donor is viewed as but natural, and less

evidence is required to establish the intention. *Though the mere possession of personal property, shown to have formerly belonged to another, is not in itself sufficient to raise a presumption that title was transferred,* yet if it appears there was a voluntary delivery without explanatory words, and a retention of possession by the transferee, *so related* [italics supplied], it can be assumed that there was an intention to give: 20 Cyc. 1220."

In Kaufmann's Est., 281 Pa. 519, 127 A. 133, involving the validity of an alleged gift inter vivos from father to daughter, this court held: "To make a valid gift inter vivos there must be a clear, satisfactory and unmistakable intention of the giver to part with and surrender dominion over the subject of the gift, with an intention to invest the donee with the right of disposition beyond recall, accompanied by an irrevocable delivery [citing Packer v. Clemson, 269 Pa. 1, 3, 112 A. 107]. . . . The purpose to do so [intending to give] followed by an actual or constructive delivery, must be shown (Yeager's Est., 273 Pa. 359 [117 A. 67]), *and the burden of proving both of the necessary elements rests on the alleged donee* [italics supplied]: Maxler v. Hawk, 233 Pa. 316 [82 A. 251]; King v. King, 273 Pa. 351 [116 A. 892]. The quantum of testimony required is not, however, so great where, as here, the relation of parent and child exists. . . . Mere admissions of a transfer, or declarations by a donor of an intent to do so, are not necessarily sufficient: Leitch v. Diamond Nat. Bank, 234 Pa. 557 [83 A. 416]; Wise's Est., 182 Pa. 168 [37 A. 936]. . . . In the instant case, the notes and stocks were admittedly at one time owned by the father, and were found in his possession at the time of death. *In law, there is a presumption of the continuance of conditions once shown to exist, and the ownership of property proven to be in one, is supposed to remain there until the contrary is made to appear* [italics supplied]: McConville v. Ingham, supra; Hartman v. Pittsburgh I. Plane Co., 11 Pa. Superior Ct. 438."

In 12 R. C. L., section 44, page 971: "The burden of proving that a gift was made, including the elements necessary to its validity, is on the donee. . . . The possession of the alleged donor is a circumstance raising a presumption against donation, but the mere possession by an alleged donee of property of the alleged donor after the death of the latter raises no presumption of ownership," citing Union Trust, etc., Bank v. Tyler, 161 Mich. 561, 126 N. W. 713, 137 A. S. R. 523. In 12 R. C. L., section 44, page 972: "Where a person living in illicit relations with another has made a gift of property to his or her mistress or paramour, especially where he has excluded natural objects of his bounty, the burden of proving that the donation was the result of free volition and was not superinduced by fraud or undue influence will rest upon the donee," citing 9 Ann. Cas. 783. In Sullivan v. Hess, 241 Pa. 407, 88 A. 544, this court said: "The burden of proof is upon the one who claims the benefit of a gift inter vivos, and the proof must be clear and satisfactory: Smith's Est., 237 Pa. 115 [85 A. 76]."

In the instant case the *initial* burden of proving that McGovern, Sr., owned a short time before his death the $6,000 in dispute was upon the administrator of his estate, and therefore perhaps technically the issue should have been framed by making the administrator the plaintiff, and Alice E. Henes the defendant. However, that Owen McGovern so owned this sum of money was admitted, and, this fact being admitted or at least easily proved, the burden would then have immediately shifted to Mrs. Henes to prove that this money was given to her as she alleged. Therefore, no substantial harm was done by placing the burden upon her in the first instance, as McGovern's alleged gift and not his ownership of the subject of the "gift," was the very essence of the controversy. It is not at all unusual in the trial of cases for the so-called "burden of proof" (or, more properly, the burden of coming forward with opposing evidence) to shift to defendant. The case of Zeck v. Hertz, 11 Pa. Supe-

rior Ct. 512, furnishes an example of the shifting of the so-called "burden of proof" in civil cases. Here plaintiff sued for money allegedly loaned defendants, and the affidavit of defense acknowledged receipt of the money but claimed it was "in consideration and payment for services rendered." The Superior Court said: "The issue was thus resolved into the question, whether the money was furnished as a loan or a gift. With this shifting of the defense the burden of proof also shifted and cast upon the defendants the duty of showing to the satisfaction of the jury that the transaction was in fact a gift, unaided by any legal presumption in its favor."

There is considerable confusion of thought arising from the fact that the phrase "burden of proof" is used indiscriminately as meaning either *burden of proof* or *burden of producing evidence*. It was aptly said in Central Bridge Co. v. Butler, 2 Gray 130: "The burden of proof and the weight of evidence are two very different things. The former remains on the party affirming a fact in support of his case, and does not change in any aspect of the cause; the latter shifts from side to side in the progress of a trial, according to the nature and strength of the proofs offered in support or denial of the main fact to be established." See also Caldwell v. New Jersey Co., 47 N. Y. 282, 290.

In the case of Abrath v. N. E. Ry. Co., 32 W. R. 50, 53, Lord Justice BOWEN said: "In order to make my opinion clear, I should like to say shortly how I understand the term 'burden of proof.' In every lawsuit somebody must go on with it; the plaintiff is the first to begin, and if he does nothing he fails. If he makes a prima facie case, and nothing is done by the other side to answer it, the defendant fails. The test, therefore, as to burden of proof is simply to consider which party would be successful if no evidence at all was given, or if no more evidence was given than is given at this particular point of the case; because it is obvious that during the controversy in the litigation there are points at which the onus of

proof shifts, and at which the tribunal must say, if the case stopped there, that it must be decided in a particular way. Such being the test, it is not a burden which rests forever on the person on whom it is first cast, but as soon as he, in his turn, finds evidence which, prima facie, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand. Now, that being so, the question as to onus of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win."

Having shown that McGovern owned the money in dispute a short time before his death, the presumption is that the ownership remained in him until the contrary was proved, and there also being a presumption that human beings do not give away property, this presumption cast upon her who claimed that McGovern gave his money to her the burden of proving it. We said in Watkins v. Prudential Ins. Co., 315 Pa. 497, 504, 173 A. 644: "Presumptions are not fact suppliers; they are guideposts indicating whence proof must come. . . . Sometimes the party who has the [initial] burden of persuading the jury does not have all through the case the burden of coming forward with affirmative evidence." If in the instant case the issue had been framed, "McGovern, administrator, v. Henes," the *real burden of the case,* which was that of producing the evidence vital to the pivotal issue, would still have been upon the latter. If she failed to meet this burden, the presumption that McGovern having once owned this money continued to own it until his death would have called for a verdict in favor of the administrator. The sixth assignment of error is overruled.

The first assignment of error is predicated on the refusal of the trial judge to give binding instructions for the plaintiff, and the second is the refusal of the court below to enter judgment for the plaintiff n. o. v. These are both overruled.

The fourth and fifth assignments are overruled. The former is that the court erred in entering judgment for

the defendant. The fifth relates to an excerpt from the charge. The latter is in its entirety impartial and fair, and it accurately and amply presents the opposing contentions of plaintiff and defendant.

The third assignment of error is the refusal of the court below to grant plaintiff a new trial. This is overruled. Plaintiff was given opportunity to prove her contention that decedent McGovern gave her the sum of money in question. The jury apparently did not give credence to the testimony of her witnesses. The credibility of these witnesses was for the jury. In Trainer v. Fort, 310 Pa. 570, 165 A. 232, we cited with approval the following from Lindemann v. Pittsburgh Rys. Co., 251 Pa. 489, 493, 96 A. 1085: "Credibility is the touchstone of testimony in the measure of its weight. . . . . Testimony may bear the stamp of truth or the badge of fraud and perjury. Who is to pass upon its value? The jury alone. The court cannot invade the province of the jury. The court's supervisory control rests in the discretion to grant new trials." In Nanty-Glo Boro. v. American Surety Co., 309 Pa. 236, 163 A. 523, this court quoted approvingly from the opinion of Mr. Justice SHARSWOOD in Reel v. Elder, 62 Pa. 308, the following: "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence," and then said, "This rule is firmly established." In the instant case there was no abuse of discretion in the refusal of the court below to grant a new trial. As claimant of this gift Mrs. Henes had to present proof that was clear and satisfactory. The jurors were by law the weighers of her proof and they evidently found it wanting. The record yields us no warrant to disturb the verdict.

The judgment is affirmed.