Guise *v.* New York Life Insurance Company, Appellant.

Argued March 10, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Douglass D. Storey,* of *Hause, Evans, Storey & Lick,* with him *John P. Butt, John B. Pearson* and *Louis H. Cooke,* for appellant.

*E. V. Bulleit,* for appellee, was not heard.

OPINION BY CUNNINGHAM, J., April 19, 1937:

Plaintiff, the insured in two policies of life insurance, issued by the defendant company in the aggregate amount of $5,000 and containing certain double indemnity and disability provisions, brought his action below, on August 14, 1935, to recover seven monthly disability payments of $50.00 each for the period from January 1, to August 1, 1935. The trial resulted in a verdict in his favor for $350.00; defendant's motions for judgment n. o. v., or a new trial, were denied and it has appealed from the judgment entered upon the verdict.

Appellant's argument in this court has been confined to the alleged error of the trial judge in over-

ruling its motions for a compulsory nonsuit and for judgment in its favor upon the whole record. Although one of the assignments is based upon the refusal of a new trial, that action of the court below is neither covered by the statement of questions involved nor is it argued in the brief. An understanding of the situation which existed when appellant's motion for a nonsuit was overruled is essential to the proper disposition of this appeal. From the pleadings and stipulations of counsel at the trial we may gather these uncontroverted facts.

The first policy was issued November 30, 1928, in the amount of $3,000; the annual premium is $163.41, including $3.00 for the "double indemnity" benefit and $14.97 for "disability" benefits. The double indemnity benefit is not involved in this case. Attached to the policy is a photostatic copy of the application therefor, signed by appellee and witnessed by two of appellant's agents, G. E. Mitchell and G. B. Wortz; there is also attached a purported copy of appellee's medical examination signed by him and Dr. J. H. Hildebrand, one of appellant's medical examiners.

The second policy, in the sum of $2,000, is dated August 5, 1930, and the annual premium is $124.04, of which $2.00 is for double indemnity and $16.22 for disability benefits. It was also issued upon a written application and after a medical examination by a different examiner, Dr. H. M. Hartman.

The applicable portions of the first policy providing coverage for "Total and Permanent Disability" of the insured read: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of

the policy on which the insured's age at nearest birthday is sixty. Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life, ...... the following benefits will be granted: (a) Waiver of Premium—The company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred. (b) Income Payments—The company will pay to the insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability......"

In the second policy the comparable provisions read: "Upon receipt by the Company at its Home Office of due proof, as hereinafter provided, that the insured has become totally disabled by bodily injury or disease so that he is and will be thereby wholly prevented from performing any work, following any occupation or engaging in any business for remuneration or profit, and that such disability has already continued uninterruptedly for a period of at least four months (such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder), and provided that ...... (3) such total disability did not arise from bodily injury or disease occurring before the insurance under this policy took effect, and *known to the insured,* but not disclosed in the application for the insurance under this policy, ...... the company will grant the following benefits." (Italics supplied)

Then follows a similar waiver of payment of pre-

miums and agreement to pay a monthly income of $20.00 upon this policy.

Each policy contained the following provision: "Before making any income payment or waiving any premium, the company may demand due proof of the continuance of total disability, but such proof will not be required oftener than once a year after such disability has continued for two full years."

Parenthetically, it should here be noted that appellant, through the phraseology adopted by it in the second policy, has brought into this case an element not usually present in disability cases.

As the contract is one of insurance against death and not against disability, the questions of fact ordinarily involved in actions to collect disability benefits are whether disability exists to the extent and has continued for the period contemplated by the disability provisions of the policy and whether the disability was caused by injury or disease occurring after the date of the policy. If the insured was *in fact* afflicted with the disabling disease when the insurance became effective, his knowledge or lack of knowledge of that fact at the time he applied for the policy is, under the terms of many policies, immaterial in a suit for disability benefits. See *McKown v. State Mutual Assurance Co.,* 127 Pa. Superior Ct. 117, 191 A. 621.

But under the terms of the second policy in this case appellee's *knowledge* of his physical condition at the date of his application is made a material factor in this litigation. In effect, the provision is that the benefits will be granted if total and permanent disability exists, unless it arose from bodily injury or disease occurring before the insurance took effect "and *known* to the insured, but not disclosed in the application" therefor.

Returning to our narration of uncontroverted facts, we find that appellee in his answers to questions, admittedly material to the risk, stated in support of each

application that he had never suffered any accident or injury, and never had any ailment or disease, except an attack of la grippe in 1917 from which he made complete recovery, and had not consulted, or been examined or treated by, any physician within the previous five years.

Upon proof of total disability, then satisfactory to appellant, it paid appellee the specified benefits of $30.00 per month upon the first policy from May, 1931, to December, 1934, in the total amount of $1,320, and waived payment of the annual premiums during that period; disability payments of $20.00 per month were also made under the second policy from August, 1931, to December, 1934, to the aggregate amount of $820, and the premiums were likewise waived on that policy.

Without any demand for proof of the continuance of appellee's disability, appellant ceased paying the benefits in January, 1935, and on July 17 of that year notified appellee "it rescinded" the double indemnity and disability sections of the policies "because of [appellee's] failure to disclose in his applications [therefor] material facts"; return of the premiums it had received upon these sections—$72.23 on the first and $23.65 on the second policy—was tendered to and rejected by appellee.

In its affidavit of defense, appellant set forth as "new matter" that the statements in appellee's applications relative to his physical condition and attendance by a physician were "false, fraudulent and untrue," in that he had previously "suffered an accident or injury, namely, double hernia," and had "suffered from an ailment or disease, namely, weak heart"; it also averred that appellee had consulted and been treated by Dr. Hildebrand within the five years preceding the making of the applications. In addition to averring that these facts were unknown to it, appellant alleged that its agent, Wortz, and medical examiner, Hildebrand, knew

appellee was not an insurable risk but conspired with appellee to cheat and defraud appellant, and that the first policy was issued without any actual medical examination.

Appellant also pleaded a "set-off and counterclaim" in which it demanded repayment of the benefits granted in the amount of $2,140, (less the premiums it had received thereon to the extent of $95.88), and payment of the waived premiums—$581.76 on the first and $423.28 on the second policy—making a total counterclaim of $3,049.16.

The substance of appellee's reply was that the applications had been made in good faith and that his answers to the questions therein contained were true and correct.

During the course of the trial counsel for appellee questioned the right of appellant to inquire into "matters relating to things prior to the issuance of the insurance policies" in view of the "incontestability clause" in each. The learned trial judge, DAVISON, P. J., specially presiding, correctly ruled that the incontestability clauses did not apply "to the provisions and conditions relating to disability ...... benefits." An examination of the clauses discloses that the disability provisions of the policies are expressly excluded from their operation. Even if that exemption had not been inserted, the clauses would not have prevented the interposition of the defense here set up: *Mayer v. Prudential Life Insurance Company of America,* 121 Pa. Superior Ct. 475, 184 A. 267.

At the trial appellee denied he had hernias prior to 1928, asserted he had not suffered from any heart condition prior to the taking out of the policies, and denied he had consulted with or been treated by a physician until after the policies had been issued. Dr. R. J. Wetzel, called by appellee, testified he began treating him in October, 1934, and had continued until the date

of the trial. His diagnosis was that appellee was suffering from dangerously "high blood pressure, hardening of the arteries and nervousness" and had a double hernia. In response to the question whether, in his opinion, appellee had been so disabled by disease from December, 1934, to the date of trial that he was wholly prevented from doing any work, or engaging in any business, for remuneration or profit, the witness replied: "From the entire time I was treating him there was no time that his improvement was good enough and sustaining enough that he could go back to work."

When counsel for appellee rested their case, appellant's counsel moved for a compulsory nonsuit substantially upon the ground that appellee had not carried the burden of proof resting upon him of establishing, under the first policy, that the disability from which he was suffering had occurred after the issuance of that policy, and, as to the second policy, that his disability had not, to the best of appellee's knowledge, arisen from bodily injury or disease occurring before the date of that policy. The ruling of the trial judge was, "The court being of the opinion that, under the facts in this case, the defense offered is an affirmative defense, the burden of proving it rests on the defendant." The motion was accordingly overruled. Appellant then introduced evidence from which the jury could have found that appellee had a double hernia before the first policy was issued; that he had been treated frequently by Dr. Hildebrand during the five years preceding his applications and had stated that he took out the insurance so that he could "play-off sick and quit work."

The trial judge submitted the issues of fact arising under the evidence to the jury in a manner concerning which no complaint is made. Appellant submitted a number of points, all of which were affirmed except the one for binding instructions. The jury was in-

structed that a verdict for appellant would not affect the life insurance provisions in either policy if they were kept in force. The following instruction was given upon the vital issue in the case: "Is this man now and has he been since December, 1934, totally disabled under the policies? That is the first question you will have to answer. Was he suffering before 1928 when he took out the first policy from any of those diseases or injuries, whatever you may term them that [have] now rendered him totally disabled; if he was, then he is not entitled to recover under this policy for his disabilities. Did he make any false answers in his application for these insurance policies to facts which were material to the issuing of the policies, and which [answers] he knew were false? If he did, then he would not be entitled to recover under the disability clauses in these policies. If he made the answers falsely, he must have known that they were false because they were answers to questions of fact which were absolutely within his knowledge. ...... It is not a case in which he might have made answer as to certain diseases and be honest in his answers because he did not have knowledge that he had that disease."

The jury was told it could render a verdict in favor of the appellee for the amount of his claim of $350., or in favor of the appellant on its counterclaim in the amount of $3,049.16. The trial judge in his opinion denying appellant's motion stated there was conflicting testimony on material questions and the jury might have found for either party, but the verdict was not, in his opinion, so clearly against the weight of the evidence as to move him to grant a new trial.

The testimony of appellee's medical witness was to the effect that his disability was attributable to the arteriosclerosis and high blood pressure from which he was suffering, rather than the hernias. It is now earnestly contended by counsel for appellant that

there was no substantive evidence, either in appellee's case in chief or in the entire record, indicative of the time appellee was first afflicted with the disabling disease to which his disability is mainly attributable; that appellee had the burden of showing that the disease "occurred" after the insurance took effect; and that their motion for a nonsuit should therefore have been granted.

We agree that the only disability *covered* by the first policy is such as has resulted from an injury which occurred, or a disease which began, after its date, and, as to the second, from an injury or disease of which appellee had no knowledge at the time, of his application.

As stated in *Mayer v. Prudential Insurance Company of America,* supra, an insured has, in an action to recover disability benefits, the general burden of proof resting upon a plaintiff of showing that his disability is within the coverage of the policy. In this case, however, the argument for appellant overlooks the fact that appellee had established, in July, 1931, to the satisfaction of appellant his right to the disability benefits specified in the policies, and that his testimony at the trial was to the effect that his first medical treatment was by a Dr. Reese in "the spring I was taken sick" and that he had not been ill prior to the date of the policies. The justification pleaded by appellant in its affidavit for abruptly terminating the payment of benefits was threefold: (a) that appellee was not totally disabled; (b) that appellant had been induced, in 1931, to begin payments by false and fraudulent statements of appellee, submitted with the intent of cheating and defrauding appellant; and (c) that the insurance contracts had been fraudulently procured through the willful making of false answers by appellee in his applications.

With the testimony for appellee in the shape above

indicated and in the light of the pleadings, the trial judge refused to enter a compulsory nonsuit.

As we view this case, appellant reserved to itself the right to show, as a substantive defense, that the disability of the insured was caused by an injury which occurred, or a disease which began, before the insurance became effective. When appellee showed the status created by the prior payments, covering a period of more than three years, and the continuance of his permanent and total disability, he was not required to anticipate a possible defense by showing, in addition, that none of the circumstances contemplated by the exceptions written into the contract were present.

We think the remarks of our Supreme Court in the recent case of *Zenner v. Goetz (Travelers Indemnity Co., Appellant)*, 324 Pa. 432, 188 A. 124, are applicable here: "When a defendant seeks to avail himself of a substantive defense reserved in a policy of insurance, when he relies upon a fact specifically mentioned in a policy as relieving him of a liability generally assumed in the policy, the defense becomes an affirmative one and the defendant at that point must shoulder the duty of coming forward with evidence in support of what he affirms. See *Bowers v. Great Eastern Casualty Co.*, 260 Pa. 147, 103 A. 536; *Watkins v. Prudential Ins. Co.*, 315 Pa. 497 at 508, 173 A. 644; and *Home Benefit Assn. v. Sargent*, 142 U. S. 691. A defendant's duty of coming forward with evidence at certain stages of a trial is sometimes loosely referred to as 'burden of proof.' The 'burden of proof' rests throughout the trial on the party affirming facts in support of his case against a defendant, while 'the burden of coming forward with evidence' may shift from side to side during the progress of a trial. See *Henes v. McGovern, Admr.*, 317 Pa. 302 at 310, 176 A. 503. We said in *Fazio v. Pittsburgh Rys. Co.*, 321 Pa. 7, 12, 182 A. 696: 'It is a well-recognized principle of evidence that he who has

138

the positive of any proposition is the party called upon to offer proof of it. It is seldom, if ever, the duty of a litigant to prove a negative until his opponent has come forward to prove the opposing positive.'"

Our conclusion is that no reversible error was committed against appellant. It was afforded full opportunity to present its defense. As it relied solely upon oral testimony, the case was necessarily for the jury.

Judgment affirmed.